IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH M. JACKSON, | : | PRISONER ACTION |
| Plaintiff, | : | 28 U.S.C. § 1331 |
| | : | |
| v. | : | |
| | : | |
| EQUIFAX INFORMATION | : | CIVIL ACTION NO. |
| SERVICES, LLC, | : | 1:14-CV-610-WSD-LTW |
| Defendant. | : | |

## FINAL REPORT AND RECOMMENDATION

Plaintiff is a prisoner in Oklahoma who, pro se, seeks damages for Defendant's alleged failure to comply with the Fair Credit Reporting Act (the "FCRA"). (Doc. 13.) Plaintiff also asks the Court to appoint counsel and an expert witness for him. (Docs. 57, 58.)

The Court screened Plaintiff's complaint and found that it stated a viable claim under the FCRA. (Doc. 19.) Defendant then appeared, through counsel, and filed an answer. (Doc. 25.) The Court later denied Plaintiff's motion for default judgment, (Doc. 46), and denied his belated motions for discovery, (Docs. 47, 54); *see infra* Part III.

AO 72A
(Rev.8/82)

Defendant filed a motion for summary judgment.[1] (Doc. 61.) For the reasons discussed below, that motion should be denied except as to one claim, Plaintiff's motion for counsel should be granted, and Plaintiff's motion for a court-appointed expert witness should be denied.

## I.    Background[2]

Plaintiff was incarcerated in Oklahoma at all times relevant to this case. Defendant is a consumer reporting agency ("CRA") within the meaning of the FCRA and creates and maintains credit files on millions of consumers in the United States.

---

[1] "Motions for summary judgment shall be filed as soon as possible, but, unless otherwise ordered by the court, not later than thirty (30) days after the close of discovery . . . ." LR 56.1D, NDGa. As discussed below, a discovery period was never set in this case. *See infra* Part III. Defendant never requested discovery and opposed Plaintiff's motions for discovery on the basis that Plaintiff unnecessarily delayed in seeking discovery. (Docs. 38, 53.) Defendant's motion for summary judgment is the only dispositive motion it filed in the case, and it did not file it until November 2015. (Doc. 61.) That was sixteen months after it filed its answer, ten months after the Court denied Plaintiff's first motion for discovery, and after the Court directed the parties to submit proposed pretrial orders. (Docs. 25, 47, 56.) The only evidence Defendant submitted with its motion is a short declaration from one of its employees. (Doc. 61-3.) The record thus indicates that Defendant did not file its motion for summary judgment "as soon as possible" but instead did what it accused Plaintiff of doing – unnecessarily delaying. *See* LR 56.1D, NDGa.

[2] Unless otherwise noted, the facts described here are undisputed. Defendant admitted some facts "[s]olely for purposes of summary judgment." (Doc. 72-1 at 3-4.)

(Doc. 71 at 2.)  In accordance with the FCRA, Defendant provides consumers with free copies of their credit files.  (*Id.* at 2-3.)

In or before January 2012, Plaintiff requested that Defendant provide him his free consumer credit file.  (*Id.* at 14.)  In his request, Plaintiff provided his name, social security number, date of birth, and an address in Pennsylvania.  (*Id.*)  There is no evidence that Plaintiff submitted any records, such as a birth certificate or other identification documents, with that initial request.  (*Id.*)

On January 14, 2012, Defendant sent Plaintiff a letter informing him that the information he provided did not match the information in Defendant's records for Plaintiff.  (*Id.* at 14, 18-19.)  Defendant addressed that letter to Plaintiff at the Pennsylvania address he provided in his request.  (*Id.* at 18-19.)  The letter told Plaintiff that to verify his identity and address he must submit to Defendant records showing his name, social security number, and the Pennsylvania address.  (*Id.*)

On February 13, 2012, Plaintiff wrote Defendant a response.  (*Id.* at 10, 20-21.)  Plaintiff attached to his response copies of his bank account statements, which listed the Pennsylvania address; his social security card; his birth certificate; and his W-2 tax form.  (*Id.*)  Defendant deems such documents sufficient for use in confirming a consumer's identity and address.  (Doc. 61-3 at 4.)

3

Pamela Smith, Defendant's Legal Support Associate, averred that Defendant also requires a prisoner to submit a copy of his prisoner identification card or other document demonstrating that he is a prisoner. (*Id.*) Defendant's January 14, 2012 letter to Plaintiff, however, did not mention any such requirement. (Doc. 71 at 18-19.) Smith further averred that Defendant will not mail a consumer credit file to an address that does not appear in the consumer's file, but will, if the consumer provides appropriate documentation, update the file with revised information and then send the file to the consumer. (Doc. 61-3 at 4-5.)

Plaintiff addressed his February 13, 2012 mailing to the address Defendant told him to send it, placed first-class postage on it, and placed it in the U.S. mail depository at the prison in Oklahoma. (*Id.* at 10, 20-21.) Plaintiff confirmed in that mailing that his current mailing address was the Pennsylvania address but noted that he had not lived there for five years. (*Id.* at 20-21.) Plaintiff also included the prison address. (*Id.* at 21.)

Smith averred that Defendant does not have a record of receiving Plaintiff's February 13, 2012 mailing. (Doc. 61-3 at 5.) According to Smith, it is thus impossible to determine whether the documents Plaintiff mailed on February 13, 2012

4

were sufficient to satisfy Defendant's requirements for release of Plaintiff's consumer file. (*Id.*)

Plaintiff never received his consumer credit file from Defendant. (Doc. 71 at 10.) Plaintiff averred that he has suffered physical and mental distress because of Defendant's failure to provide him with his consumer credit file and that those problems continue today. (*Id.* at 14-16.) Plaintiff averred that the mental distress includes hurt feelings, anger, and frustration. (*Id.* at 10.) Plaintiff averred that the physical ailments include headaches and stomach problems and that he takes medicine to relieve the pain. (*Id.* at 10, 14, 16.) Plaintiff submitted records showing that prison healthcare providers have prescribed him omeprazole, famotidine, and excedrin for the ailments that he contends were caused by Defendant's actions. (*Id.* at 25-30.) Plaintiff also averred that other prison inmates witnessed him being ill over Defendant's failure to provide him his consumer credit file. (*Id.* at 14.)

## II.   Defendant's Motion For Summary Judgment

### A.   Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant carries the initial burden of "informing the court of the

5

basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The non-movant then is required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation marks omitted). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U .S. 372, 380 (2007).

6

B.   Analysis

The FCRA provides that "[e]very [CRA] shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). Section 1681h(a)(1) requires the consumer to furnish proper identification to the CRA to obtain a consumer credit file, but the FCRA does not define "proper identification." "[A] consumer's request for his report, without limitation, is sufficient to invoke the consumer's rights under § 1681g(a)." *Taylor v. Screening Reports, Inc.*, 294 F.R.D. 680, 685 (N.D. Ga. 2013) (holding that consumer's request for his "report" or his "file" is sufficient to trigger CRA's obligation under § 1681g(a)). A consumer may recover his actual damages sustained as a result of a CRA's failure to comply with his request for his consumer credit file and may recover statutory and punitive damages if the CRA willfully failed to comply. 15 U.S.C. §§ 1681n, 1681o; *see Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1013 (D. Minn. 2013) ("Sections 1681n and 1681o create civil liability when a CRA fails to comply with any of its requirements, including its disclosure requirements.").

Defendant's primary argument in support of its motion for summary judgment is that Plaintiff cannot prove that he mailed documents to Defendant verifying his

7

address at the Oklahoma prison or that Defendant received those documents. (Doc. 61-1 at 7-9.) That argument fails because there is a genuine issue of fact as to whether Defendant received Plaintiff's February 13, 2012 letter that included documents verifying Plaintiff's identity and the Pennsylvania address that Defendant had in Plaintiff's consumer credit file.

First, there is no evidence disputing Plaintiff's averments that he placed the February 13, 2012 package in the U.S. mail, with proper postage, addressed to the address at which Defendant told him to send it and that the package contained documents that Defendant accepts for verifying a consumer's identity and address. Although Defendant says it did not receive that mailing, Plaintiff accurately pointed out in his response brief that there is a rebuttable legal presumption that an item properly addressed, stamped, and mailed was received by the addressee.[3] Indeed, the law "has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." *Konst v. Fla. E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996); *see Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240-42 (11th Cir. 2002). The "mere denial of receipt is insufficient to rebut the presumption." *In re Hobbs*, 141 B.R. 466 (Bankr. N.D. Ga. 1992). Defendant's only evidence that it did

[3] Defendant did not address or respond to this issue in its reply brief. (Doc. 72.)

8

not receive Plaintiff's mailing is the testimony of its Legal Support Associate who reviewed its records and did not find evidence of receipt. That evidence does no more than establish a factual issue as to whether the presumption is rebutted and, thus, whether Defendant received the mailing. *See Barnett*, 283 F.3d at 1241 (noting that when an item is mailed to an office, rather than a specific person, there must be evidence about the office's practice and procedure for receiving and filing incoming mail to infer that the mail was not received).

Second, it is undisputed that Plaintiff's February 13, 2012 mailing included proof of his Pennsylvania address that was in his consumer credit file maintained by Defendant.[4] Defendant will mail a consumer credit file to only the address in the file once the consumer has provided documentation matching his identity to that address. (Doc. 61-3.) Plaintiff presented evidence that he provided such documentation for his Pennsylvania address, and it is undisputed that the Pennsylvania address was in Plaintiff's consumer file.[5]

---

[4] Defendant "admits that a question of fact is present as to whether Plaintiff provided [Defendant] with documents evidencing the Pennsylvania address." (Doc. 72-1 at 2.)

[5] In a footnote in its reply brief, Defendant stated that the Pennsylvania address in Plaintiff's February 13, 2012 letter slightly differs from the Pennsylvania address currently in Plaintiff's consumer file. (Doc. 72 at 4 n.1.) Defendant presented no

9

Defendant's reliance on Plaintiff's purported failure to verify his prison address misses the mark, as the evidence in the record indicates that Plaintiff had to verify only the address in his consumer credit file – the Pennsylvania address. Plaintiff identified the Pennsylvania address as his mailing address and mailed documents verifying that it was his address. Defendant provided no legal authority for its assertion that a prisoner does not provide "proper identification" under the FCRA if he does not verify the prison address or its assertion that the FCRA does not require Defendant to provide a credit file to a prisoner at an address other than the prison.[6]

---

evidence to support that assertion, however, and, more importantly, no evidence that the Pennsylvania address Plaintiff provided in February 2012 differed in any way from the address in his consumer file at that time. (*See id.*; Doc. 61-3.) Moreover, the evidence Defendant did present is that when it receives appropriate documentation – like that Plaintiff avers he provided tying him to the Pennsylvania address – it will update the information in its file and send the requested disclosure. (Doc. 61-3 at 5.)

[6] Defendant cited only *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *1-5 (E.D. Mich. Apr. 16, 2012), which it said involved "almost identical circumstances" as this case. (Doc. 61-1 at 9; *see* Doc. 72 at 2-4 (citing no authority in reply brief).) Not so. There is no indication that the consumer in *Garrison* was a prisoner or that a prison address was at issue. *See generally Garrison*, 2012 WL 1278044. Furthermore, the consumer in *Garrison*, unlike Plaintiff, did not produce evidence of proper mailing to establish the legal presumption that his mailing was received. *Id.* at *3-4 (granting summary judgment to Defendant on claim that consumer credit file was not provided because the plaintiff did not "present evidence that [his] letter was properly addressed, had sufficient postage, and was deposited in the mail" (quotation marks omitted)).

AO 72A
(Rev.8/82)

If a prisoner provides documentation both proving his identity and tying his identity to the address that is in his consumer credit file, his request that the file – his personal file containing only his information – be sent to that address is not a "troubling red flag . . . under [] suspicious circumstances" as Defendant asserts. (*See* Doc. 72 at 4.) If a prisoner asks that a credit file be sent to an address not in the file without providing documentation linking his identity to that address, whether it be the prison or elsewhere, Defendant's argument would at least be supported by the policy behind the FCRA.  But that is not the case here based on the evidence in the record.

Defendant's alternative argument in support of its motion for summary judgment is that Plaintiff cannot prove actual damages caused by Defendant's alleged failure to provide his consumer credit file. (Doc. 61-1 at 9-11.) Defendant contends that Plaintiff claims only mental distress and that such harm cannot support relief under the FCRA.  (*Id.*)

Plaintiff alleged, and provided evidence of, more than just mental distress. Plaintiff averred that he suffered physically, in the form of headaches and stomach pain, because of Defendant's failure to comply with his request for his consumer credit file.   Plaintiff produced medical records from the prison supporting his averments of physical pain and suffering.  Viewing that evidence in the light most

11

favorable to Plaintiff, there is a genuine factual issue as to whether Plaintiff suffered actual damages as a result of Defendant's alleged failure to comply with the FCRA and the extent of those damages.

In its reply brief, Defendant argued that Plaintiff produced no evidence to support the allegation in his complaint that Defendant willfully violated the FCRA by not providing him his consumer credit file. (Doc. 72 at 6-7.) As noted above, a willful violation subjects a CRA to statutory and punitive damages. 15 U.S.C. § 1681n.

Defendant did not raise in its opening brief the argument regarding Plaintiff's claim of a willful violation. (Doc. 61-1.) Indeed, there is no mention of willful violations, punitive damages, or statutory damages in Defendant's opening brief, including in the section where Defendant argued that Plaintiff could not prove actual damages. (*Id.*) Defendant thus waived its argument regarding the willful violation claim by not raising it until its reply brief. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *McGill v. Am. Trucking and Transp., Ins. Co.*, 77 F. Supp. 3d 1261, 1266 (N.D. Ga. 2015) ("[B]ecause [defendant]

12

raised this argument for the first time in its [summary judgment] reply brief, the argument is abandoned and will not be addressed by the court.").

Finally, it appears that Plaintiff asserts an FCRA claim based on the first letter he sent Defendant in or before January 2012, which was his initial request for his consumer credit file. It is undisputed that Plaintiff sent that letter (Defendant responded to it) and that the information Plaintiff provided did not match the information in his consumer credit file maintained by Defendant. There is no evidence in the record that Plaintiff included with that initial letter documentation or other proof of his identity and address. There is only evidence that he provided such proof with the second letter he sent in February 2012. There is thus no factual issue as to whether Plaintiff provided proper identification with the initial, pre-February 2012 letter and, thus, whether Defendant violated the FCRA by not providing Plaintiff's consumer credit file in response to the initial letter. Summary judgment should be granted in favor of Defendant on the claim regarding the initial letter.[7]

_____

[7] Defendant also argues that there is no evidence supporting any claim that it failed to send Plaintiff's consumer credit file to the prison in Oklahoma. (Doc. 72 at 1-2.) The Court does not find any such claim in Plaintiff's pleadings. Plaintiff consistently pled and argued that only the Pennsylvania address was his mailing address and that he informed Defendant of that fact. (Docs. 1, 11, 13.) Moreover, all the correspondence between the parties in 2012 appears to have used the Pennsylvania address. (*See* Doc. 71 at 18-24 (also including August 14, 2012 letter from the Federal

## III.   Plaintiff's Motions For Counsel And A Court-Appointed Expert

"A plaintiff in a civil case has no constitutional right to counsel," and the court appoints counsel "only in exceptional circumstances." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999) (citing *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir.1992)). When it denied Plaintiff's motion for counsel filed early in this case, the Court stated that it would consider whether to seek counsel for Plaintiff if the case proceeded to trial or similar proceedings became warranted.   (Doc. 19 at 5.)   Given the undersigned's recommendation that summary judgment be denied (except as to one claim), trial is the next phase of this case.   If that recommendation is adopted, there arguably will be exceptional circumstances warranting a request for counsel for Plaintiff, including that a trial would be held in Georgia while Plaintiff is incarcerated in Oklahoma. It is **RECOMMENDED** that the District Court grant Plaintiff's motion for counsel if the District Court adopts the recommendation regarding summary judgment.

Plaintiff also seeks a court-appointed expert witness under Federal Rule of Evidence 706 because the "medical issues involved in this case are complex and

---

Trade Commission addressed to Plaintiff at the Pennsylvania address).)

14

involve psychological pain" and Plaintiff cannot afford to pay an expert. (Doc. 58.) Rule 706 provides that "the court may order the parties to show cause why expert witnesses should not be appointed and . . . may appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). Appointment of an expert witness under Rule 706 is a discretionary decision. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1348-49 (11th Cir. 2003).

Over two years ago, Plaintiff filed in Pennsylvania his original complaint in this case. (Doc. 1.) Plaintiff alleged from the outset that he suffered medical problems, including psychological harm, from Defendant's actions. (*Id.*) Plaintiff filed with his original complaint discovery requests asking Defendant to identify, among other things, expert witnesses it planned to use in the case. (Docs. 4, 5, 6.) The case was then transferred to this Court. (Doc. 16.) In March 2014, the Court entered an Order advising the parties that the case was assigned to a zero-month discovery track and that a party seeking discovery must file a motion requesting discovery by a certain deadline. (Doc. 19.)

Plaintiff did not file a motion for discovery until October 2014, after the deadline. (Doc. 36.) Plaintiff filed another motion for discovery almost a year later. (Doc. 52.) Plaintiff did not mention expert witnesses or request discovery regarding

AO 72A
(Rev.8/82)

his claimed medical problems in either of those motions. (*Id.*) The Court denied the motions. (Docs. 47, 54.)

Plaintiff did not file his motion for a court-appointed expert witness until November 2015, almost two years after he filed the case. (Doc. 58.) That also was almost two years after Plaintiff claimed damages for his alleged medical problems and asked Defendant to identify any expert witnesses it planned to use in the case. Plaintiff had ample opportunity to properly seek discovery of evidence regarding his claimed medical problems and demonstrated from the outset of this case his knowledge of civil litigation and the procedural rules. Yet Plaintiff passed on that opportunity and only asked the Court at the eleventh hour to appoint an expert witness, at someone else's expense, to support his own claims.[8] Given those facts, the Court should deny Plaintiff's motion for a court-appointed expert witness.

## IV.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's motion for summary judgment [61] be **GRANTED** as to Plaintiff's claim based on his initial

---

[8] Rule 706 provides that a court-appointed expert witness is paid "by the parties in the proportion and at the time that the court directs – and the compensation is then charged like other costs." Fed. R. Evid. 706(c)(2).

16

his claimed medical problems in either of those motions. (*Id.*) The Court denied the motions. (Docs. 47, 54.)

Plaintiff did not file his motion for a court-appointed expert witness until November 2015, almost two years after he filed the case. (Doc. 58.) That also was almost two years after Plaintiff claimed damages for his alleged medical problems and asked Defendant to identify any expert witnesses it planned to use in the case. Plaintiff had ample opportunity to properly seek discovery of evidence regarding his claimed medical problems and demonstrated from the outset of this case his knowledge of civil litigation and the procedural rules. Yet Plaintiff passed on that opportunity and only asked the Court at the eleventh hour to appoint an expert witness, at someone else's expense, to support his own claims.[8] Given those facts, the Court should deny Plaintiff's motion for a court-appointed expert witness.

## IV.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's motion for summary judgment [61] be **GRANTED** as to Plaintiff's claim based on his initial

---

[8] Rule 706 provides that a court-appointed expert witness is paid "by the parties in the proportion and at the time that the court directs – and the compensation is then charged like other costs." Fed. R. Evid. 706(c)(2).

16

request (made before February 2012) for his credit report and otherwise be **DENIED**. If that recommendation is adopted, **IT IS FURTHER RECOMMENDED** that Plaintiff's motion to appoint counsel [57] be **GRANTED** and that the parties be ordered to mediation. **IT IS RECOMMENDED** that Plaintiff's motion for a court-appointed expert [58] be **DENIED**.

      **SO RECOMMENDED** this ___1___ day of ____February____, 2016.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

17